UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO.  3:10CR25(EBB) |
| MICHAEL BOND | : | August 6, 2010 |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### Introduction

The fact of a felony conviction, with the attendant lifelong collateral disabilities, is itself a significant penalty, and in some cases it is punishment enough.  This is such a case.  Probation, though less severe than a custodial sentence, also is a substantial restriction on liberty that is significantly punitive.  See Gall v. United States, 128 S.Ct. 586, 595-96 (2007).  For this first offender whose crime caused neither injury nor financial loss, a sentence of this type would suffice to achieve the basic goals of sentencing.  The offense itself, structuring cash transactions to avoid reporting requirements, is a regulatory offense designed to enhance the government's ability to track cash proceeds of criminal activity, but the cash deposited by Mr. Bond was lawfully obtained casino winnings belonging to his former employer.

The Presentence Report ("PSR") aptly and correctly states, "[i]t appears that Mr. Bond poses little, if any, risk of recidivism, and will likely require minimal supervision in order to ensure he remains crime-free."  PSR ¶ 64.  The PSR further notes that Mr. Bond's criminal conduct might be viewed as "aberrant" for purposes of imposing a non-Guidelines sentence that satisfies the basic statutory purposes of sentencing.  PSR ¶ 59.  Fundamentally, a sentence within the advisory Guidelines range of 21-27 months calculated in the Presentence Report, or even any term of imprisonment, would be greater than needed to achieve the goals of sentencing embodied in 18 U.S.C. § 3553(a).  Respectfully, in this case of a victimless crime by a first and last-time offender, a non-custodial sentence with a constructive condition of community service would best achieve the goals of sentencing.

- 2 -

A.	**The History and Characteristics of Mr. Bond**

The PSR observes that Mr. Bond "was raised in a loving and supportive home [and] his lack of criminal history may indicate that he is not, as with so many other criminal defendants, predisposed to commit crime." PSR ¶ 64. A review of his background fully supports this conclusion. Michael Bond is a 36 year-old man with no criminal history whatsoever. PSR ¶ 27. He was raised in Brooklyn in an intact family, with four siblings, by hard-working parents. PSR ¶ 30. All family members have solid records of gainful employment. PSR ¶ 31. Although they lived in a low-income housing project, where Mr. Bond was exposed to an environment toxic to so many other young men, Mr. Bond, aided by strong parents and his solid family, steered clear of negative influences. PSR ¶ 32.

Michael Bond was blessed with athletic ability and devoted himself from an early age to basketball. His skill led to success on the court and to a full scholarship to the University of Hartford. PSR ¶¶ 32, 35. He took full advantage of this opportunity and graduated from that university in 1995 with a Bachelor of Arts degree. PSR ¶ 45. While attending that school, Mr. Bond met another student-athlete who became a central figure in Mr. Bond's life, including his involvement in the instant offense. That individual, referred to in the indictment and here as "Person A", was a star basketball player in college who went on to have a career in the NBA. Upon his graduation from the University of Hartford, Mr. Bond went to work for Person A as his personal assistant from 2003 through the end of 2006. PSR ¶ 46. In that role, he ran errands and handled personal matters, including financial transactions for Person A. PSR ¶ 7. The job required frequent travel and numerous relocations as Person A played for seven teams. When Person A's professional basketball career ended, Mr. Bond moved back to Brooklyn, where he lives now with his parents.

Mr. Bond has been unsuccessful to date in finding employment. He had expected to work for the State of New York in a social work capacity but that opportunity fell through when the state was forced to freeze new hiring due to its severe financial problems associated with the prolonged national recession. Mr. Bond aspires to return to school to obtain a master's degree in social work with the ultimate goal of having a counseling practice. PSR ¶ 44.

- 3 -

**B.      The Nature and Circumstances of the Offense**

After his employment with Person A ended, Mr. Bond maintained a close friendship with his former boss. On April 26, 2007, Person A, an avid and high stake's gambler, won big at the Foxwoods Resort Casino and cashed out more than $120,000. PSR ¶ 8. With cash on hand, he traveled to a nightclub in New York where he met Mr. Bond, who he earlier had called to report his luck at the casino and his plan to go to the club. Mr. Bond was concerned that Person A would "blow" the money and he persuaded Person A to entrust him with his winnings. Over the course of the next three banking days, Mr. Bond made deposits of Person A's funds to Person A's bank account in amounts of $10,000 or less. PSR ¶¶ 10, 12. All told, he made eight cash deposits totaling $79,100 into Person A's bank account. In addition, he deposited $13,000 cash in amounts of less than $10,000 to his own bank account on April 28 and April 30, and had three $10,000 bank checks drawn, all for Person A's benefit. PSR ¶¶ 9,11-12. Finally, on June 20-21, Mr. Bond deposited, in amounts less than $10,000, a total of $24,000 to his own bank account. PSR ¶ 13. The total amount of the structured funds was $120,100. PSR ¶¶ 8, 14.

Mr. Bond was interviewed by federal investigators on October 24, 2007, and he admitted to making cash deposits to Person A's accounts in amounts that would not generate cash transaction reports. He also admitted that he knew of the cash transaction reporting requirement, although he did not know that structuring transactions to avoid such reporting was criminal until he was so advised by the investigating agent. Mr. Bond explained that he had taken the cash from Person A, who won it at a casino, because he did not want Person A holding the money, and that he made the deposits in the manner he did because he did not want to prove where the funds came from. He also explained that the funds were Person A's from the casino and were not skimmed from Person A's business or some other source. Mr. Bond, who was unemployed when he engaged in these transactions, structured the deposits because he foolishly wanted to avoid having the bank ask questions. PSR ¶ 15. Had he known the actions were criminal he would not have handled the money in this manner.

- 4 -

**C.     Consideration of Guidelines and Statutory Factors**

In the wake of United States v. Booker, 543 U.S. 220 (2005), the applicable Sentencing Guidelines imprisonment range is a factor the Court must "consider" in "tailoring" a sentence to fit the particular defendant and the offense of conviction. As before Booker, sentencing courts are required to impose a sentence "sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [18 U.S.C. § 3553(a)]." See United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008)(en banc). These purposes are:

> (2) the need for the sentence imposed -
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

Under 18 U.S.C. § 3553(a), the sentencing judge must consider enumerated factors, including the Guidelines. United States v. Crosby, 397 F.3d 103, 110 (2d. Cir. 2005). The statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range[,]" and "[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan." Id. at 111. Ultimately, after considering the relevant factors in light of the principle that "the Guidelines are no longer mandatory[,]" the sentencing judge must decide "whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." Id.

> **1.     The Advisory Guidelines Sentencing Calculation**

The Presentence Report reaches the following conclusions regarding possible sentences:

- 5 -

1) maximum term of probation of five years and Guideline maximum of three years; 2) Guidelines imprisonment range of 21-27 months; 3) maximum term of supervised release of three years and Guidelines range of two-three years; and 4) maximum fine of $250,000 and Guideline range of $250 to $5,000. PSR ¶¶ 51-58. The Report applies U.S.S.G. § 2S1.3 to this offense, and that guideline has a base offense level six, to which 10 levels are added by cross-reference to U.S.S.G. § 2B1.1 because the total amount structured was between $120,000 and $200,000. PSR ¶ 19. Two levels are deducted for acceptance of responsibility, resulting in total offense level 16. PSR ¶¶ 25-26. Mr. Bond has no criminal record and, at Criminal History Category I, the resulting advisory imprisonment range is 21-27 months. As a factor to be considered in sentencing Mr. Bond for his criminal conduct, this advisory sentencing range deserves little weight.

A review of the evolution of this guideline reveals a series of changes reflecting the lack of any tie between the resulting sentencing range and the promotion of the basic statutory purposes of sentencing. In its original form, Section 2S1.3 had a base offense level of 13 and required an upward adjustment of one level for the amount structured here. If the defendant knew or believed the funds were criminally derived property there was a four-level upward adjustment. Under that guideline, with credit for acceptance of responsibility, the total offense level here would be 12 and the sentencing range would be 10-16 months.

In 1993, Section 2S1.3 was revised to provide a base offense level of six plus an adjustment based on the fraud table in Section 2F1.1, which would have added seven levels here. A two-level adjustment, rather than four, applied if the defendant knew or believed the funds were proceeds of unlawful activity or were intended to promote unlawful activity. Most significantly, if that adjustment did not apply, the defendant did not act with reckless disregard of the source of the funds, and the funds were proceeds of lawful activity and were to be used for lawful purposes, the offense level was reduced to six. Applied here, that guideline would result in a total offense level of four after giving due credit for acceptance of responsibility, and Mr. Bond would face an advisory sentencing range of 0-6 months. That guideline remained in effect until 2001, when it was changed to its current form. Notably, the new

- 6 -

guideline added an enhancement of two levels if the defendant "committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period" and it disqualified a defendant from the reduction to base offense level six if that upward adjustment applied. Thus, with no rationale set forth in the commentary, the Sentencing Commission simply inserted an essentially arbitrary measure as a proxy for "seriousness." While the Sentencing Commission was free to revise the guideline in this manner, the change was untethered to any well-considered policy related to the fundamental purposes of sentencing and the Court can and should give the resulting application in this case little weight in "considering" it as required by Crosby.

2. **The Statutory Purposes**

The basic goals of sentencing expressed in 18 U.S.C. § 3553(a)(2) are the need for just punishment, deterrence (specific and general), incapacitation and rehabilitation. See Rita v. United States, 551 U.S. 338, 347-48 (2007). None of these purposes requires a sentence of imprisonment; all would be fully satisfied by a sentence of probation with a condition of community service.

The concept of just punishment seeks to match the punishment to the seriousness of the offense. In this case the offense was essentially a regulatory violation that did not relate to the fundamental purposes for which the structuring laws were designed. The crime involved no wilfulness, indeed the statute was revised to eliminate that element. While Mr. Bond knew of the cash transaction reporting requirement, he did not know that evading it was criminal. That, of course, is no defense to the crime because wilfulness is no longer an element, but it is a relevant factor in assessing the seriousness of the offense in this particular case.

While the Guidelines fail in their assessment of seriousness due to the arbitrary disqualification of mitigation where the amount exceeds $100,000 in a year's period, they do identify other mitigating factors which the Court should weigh in assessing the seriousness of the offense in a non-Guidelines analysis. Since 1993, the Sentencing Commission has embodied in U.S.S.G. § 2S1.3 significant mitigation where the offender did not know that the funds were criminal proceeds, where the funds actually were proceeds of lawful activity, and where they were to be used for lawful purpose. All of

those mitigating factors apply here and as non-Guidelines factors they offset the weight of the government's anticipated argument that this particular case is so serious as to warrant a term of imprisonment because of the amount of funds structured and the number of transactions.

There is no need to imprison Michael Bond to deter him from re-offending or to incapacitate him for the protection of society. He is a 36 year-old first offender who has not shown any proclivity for criminal conduct. The PSR correctly opines that "[i]t appears that Mr. Bond poses little, if any, risk of recidivism, and will likely require minimal supervision in order to ensure that he remains crime-free." PSR ¶ 64. Nor is there a persuasive reason to incarcerate Mr. Bond to deter others from structuring transactions. As in all criminal cases, the elusive goal of general deterrence arguably would be advanced by a sentence of imprisonment, the longer the better. This objective, however, is but one of several the Court must consider, it does not carry special weight, and in the context of structuring offenses it seems not to have driven sentencing decisions in many other cases in this district. See United States v. Joseph Abbaza, 3:08CR180(CFD)(3 year's probation); United States v. Philip Armetta, 3:07CR247(EBB)(3 month's incarceration); United States v. James Bergen, 3:07CR294(PCD)(18 month's probation); United States v. Nicholas Demaro, 3:09CR272(EBB)(2 year's probation); United States v. Rocky Delmaro, 3:10CR11(EBB)(2 year's probation); United States v. Isalina Karker, 3:07CR93(JBA)(12 month's probation); United States v. Charles Keoshgerian, 3:07CR93(JBA)(30 day's incarceration); United States v. Raymond Lemley, 3:07CR210(AVC)(2 years probation); United States v. Richard Sbordone, 3:08CR134(PCD)(1 year probation); United States v. Mi Song Yi, 3:08CR134(PCD)(1 year probation). While those cases may be factually distinguishable, what stands out for purposes of general deterrence is that sentencing courts have not considered that objective to call for any significant sentence of imprisonment, and in the vast majority of the cases they have imposed a sentence of probation.

Finally, the objective of providing a defendant with needed rehabilitation is not implicated here and certainly would not be furthered by incarcerating Mr. Bond.

- 8 -

## CONCLUSION

In 2007 Michael Bond foolishly and unlawfully structured a series of cash transactions to avoid the filing of reports. He is now and forever will be branded a felon. He had no criminal record before this offense, he has complied with conditions of release while the case was pending, and he presents no risk of re-offending. His criminal conduct caused no financial harm and left no victims. As the PSR concluded, "[h]e must now face the consequences of committing a federal felony, and apply any lessons he learns from this experience as his life moves forward." PSR ¶ 65. A consequence of the conviction, however, need not be loss of liberty and he urges the Court to sentence him to probation.

                                                Respectfully submitted,

                                                THE DEFENDANT,
                                                MICHAEL BOND

                                                THOMAS G. DENNIS
                                                FEDERAL DEFENDER

                                                /s/

Dated: August 6, 2010                      _____
                                                Paul F. Thomas
                                                Assistant Federal Defender
                                                265 Church Street, Suite 702
                                                New Haven, CT 06510
                                                Phone: (203) 498-4200
                                                Bar no.: ct01724
                                                Email: paul.thomas@fd.org

- 9 -

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 6, 2010 a copy of the foregoing Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/

Paul F. Thomas  
Office of the Federal Defender  
265 Church St., Suite 702  
New Haven, CT 06510  
Phone: (203) 498-4200  
Fax: (203) 498-4207  
Email: paul.thomas@fd.org